IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHERYL BUCKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-65-R |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security insurance benefits (SSI) under the Social Security Act. United States District Judge David L. Russell has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

I.     **PROCEDURAL BACKGROUND**

Plaintiff's application for supplemental security income was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an

unfavorable decision on May 9, 2011 (TR. 70-82). On review, the Appeals Council remanded for reconsideration of additional evidence. (TR. 88-90). Following a second hearing, the same ALJ issued yet another unfavorable decision on May 17, 2013. (TR. 15-26). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the May 17, 2013 decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 13, 2010, the alleged disability onset date. (TR. 18). At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease; migraines; depressive disorder; and anxiety disorder. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (TR. 25). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant must have the option to sit and/or stand at one hour increments. The claimant is able to understand, remember, and follow simple instructions to perform routine tasks and is able to sustain concentration necessary to perform unskilled work with the specific vocational profile level of two. The claimant is able to interact with coworkers and supervisors on a

superficial work basis with routine supervision but cannot interact appropriately with the general public.

(TR. 20).

Based on the finding that Plaintiff had no past relevant work, the ALJ proceeded to step five. There, he presented a portion of the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 60). Given the limitations, the VE testified that Plaintiff could perform three jobs. (TR. 60-61). The ALJ adopted the testimony of the VE and concluded that Ms. Buckley was not disabled. (TR. 26).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) multiple errors relating to the ALJ's consideration of her migraine headaches, (2) failure to incorporate mental work-related limitations in the hypothetical to the VE, and (3) improper consideration of treating and consultative physician's opinions.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.     ERRORS IN THE CONSIDERATION OF MIGRAINE HEADACHES**

At step two, the ALJ concluded that Ms. Buckley suffered from severe migraine headaches. (TR. 18). According to Plaintiff, the ALJ failed to: (1) consider the effect of the migraines throughout the disability determination and (2) include related limitations in the RFC. Ms. Buckley is correct and the errors warrant remand.

**A.     Evidence of Headaches**

Ms. Buckley alleges a history of chronic migraine headaches. Indeed, such evidence exists to support her allegations. In February 2007, despite "unremarkable"

findings on an MRI, neurologist Dr. J. Wade explained that Ms. Buckley had headaches associated with nausea, vomiting, and photophobia which could last 24 hours. (TR. 319). In March 2007, Dr. Wade noted a "constant" headache with photophobia and pain radiation to Plaintiff's head, diagnosed "chronic headache syndrome," and prescribed a new medication. (TR. 318). In June 2007, Plaintiff stated that the medication had not helped and that she was still experiencing headaches with nausea. (TR. 317) Dr. Wade again diagnosed "chronic headache syndrome." (TR. 317).

In January 2008, Dr. Martin Martucci diagnosed Plaintiff as being neurologically "positive for headache." (TR. 386). Six months later, Dr. Joseph Knight noted that Plaintiff reported suffering from migraines several times a week. (TR. 461). In July and December 2008, Plaintiff reported that the headaches were controlled with medication. (TR. 455, 459). In February 2009, Ms. Buckley stated that she was suffering one-two migraines per month. (TR. 453). From March to June 2009, the migraines were controlled with medication. (TR. 443, 445, 449, 451). However, in July 2009, Plaintiff reported that she had suffered six headaches in the prior month with associated nausea. (TR. 441-42).

Between October 2009 and May 2010, Plaintiff reported between two and nine migraines per month. (TR. 421, 423, 425, 427, 429, 435). At the first administrative hearing in April 2011, Ms. Buckley testified that she suffered one migraine per week which was accompanied by nausea and sensitivity to noise and light. (TR. 40, 45). In June 2012, Plaintiff was admitted to the hospital because she had been suffering a

migraine headache for 19 hours straight. (TR. 565, 568). Between June 2012 and March 2013, Ms. Buckley was diagnosed with acute migraines. (TR. 539, 542, 548, 554, 557, 560). And at the second administrative hearing in April 2013, Plaintiff agreed that her migraines were "devastating" and required her to lie down and avoid exposure to light. (TR. 59).

### B.   Error in the ALJ's Analysis of Plaintiff's Migraines

The ALJ found the migraines to be severe at step two. (TR. 18). And at step three, the ALJ specifically noted that there was "no listed impairment for headaches" and that Ms. Buckley did not meet the requirements of a listed neurological impairment. (TR. 18).

Ms. Buckley argues that because the migraines were deemed severe at step two, "it was error to not include some [related] limitation . . . in her RFC." (ECF No. 12:13-15). According to the Plaintiff, "[o]nce an impairment is determined to be severe, it must be reflected in the RFC." (ECF No. 12:14). This assertion is incorrect. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) ("[s]imply because plaintiff established a 'severe impairment' . . . does not *necessarily* require that the ALJ conclude that the impairment materially erodes plaintiff's RFC.") (emphasis in original).

However, as alleged by Plaintiff, the ALJ had to consider effect of the migraines when assessing the RFC. *See* Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, Westlaw op. at 5 (July 2, 1996) (SSR 96-8p) ("In assessing RFC, the

adjudicator must consider limitations and restrictions imposed by all of an individual's impairments . . . ."); *Greer v. Colvin*, 2015 WL 1431536, Westlaw op. at 7 (W.D. Okla. Mar. 27, 2015) (unpublished op.) ("[h]aving found that Plaintiff's . . . migraine headaches . . . were [a] 'severe impairment[]' that would 'significantly limit[]' Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments.") (citation omitted). The Court should conclude that the ALJ failed in this regard.

The ALJ acknowledged that Ms. Buckley had been intermittently prescribed various medications for recurrent headaches since at least 2007. (TR. 21). Even so, the ALJ dismissed the migraines as not having any impact on Ms. Buckley's ability to work, stating:

> Diagnostic studies, including the brain MRI performed on January 24, 2007, were unremarkable. The claimant advised her pain management physician, Dr. Knight, on February 12, 2009, that her migraines occurred once or twice per month and seemed to be triggered by stormy weather, but were controlled with medication. She advised at her office visits between March 26 and May 24, 2010, of having headaches two to three times per month. Upon serial examinations, the claimant is neurologically intact with normal cervical findings.

(TR. 21) (internal citation omitted). The ALJ also acknowledged Plaintiff's testimony at the first and second hearings regarding the once weekly migraines accompanied by the need to take medication and lie down. (TR. 23). He appears to discount the allegations, however, by citing the Plaintiff's daily activities and relying on "minimal findings in evidence." (TR. 23). The Court should conclude that the ALJ's rationales for discounting

7

the migraines and failing to include related limitations in the RFC lack substantial evidence and are contradicted by overwhelming and contrary evidence.

First, the ALJ's citation to the January 2007 "unremarkable" MRI is not dispositive. In fact, less than one month following the MRI, the neurologist who ordered the brain scan diagnosed Ms. Buckley with "chronic headache syndrome" and noted migraines with nausea, vomiting, and photophobia. (TR. 317, 318).

Second, the ALJ's statement regarding the February 2009 report of headaches is misleading. The statement implied that Plaintiff had attributed her migraines only to stormy weather and that the headaches were controlled by medication. (TR. 21). At the first administrative hearing, Plaintiff stated that rainy or cloudy days affected her migraines. (TR. 40). But when further questioned, Plaintiff explained that allergens other than the weather could trigger a migraine. (TR. 40). And between January 2007 and April 2013, Plaintiff only once attributed the headaches to the weather. (TR. 45, 59, 317, 318, 319, 386, 421, 423, 425, 427, 429, 435, 437, 441, 442, 453, 461).

Third, although the ALJ mentions the reports of two-three monthly migraines between March and May 2010, he seems to discount the findings by stating "[u]pon serial examinations, the claimant is neurologically intact with normal cervical findings." (TR. 21). The ALJ's recitation of the 2010 evidence was accurate, but the ALJ may not rely on the reports without reconciling conflicting evidence. *See Brown v. Chater*, 106 F.3d 413, 1997 WL 26559, Westlaw op. at 2 (Jan. 24, 1997) (unpublished op.) ("It is the province and the duty of the ALJ to reconcile conflicts in the record. . ."). Evidence

exists which contradicts the ALJ's statement that Plaintiff was "neurologically intact." *See* TR. 386 (statement from Dr. Martucci that Ms. Buckley was neurologically "positive for headache.") And the ALJ's statement implies that the headaches had only existed at that frequency for a three-month time period. But records show that between July 2009 and April 2011, Ms. Buckley reported between four and nine migraines per month. (TR. 45, 421, 423, 425, 427, 429, 435, 441, 442).

In addition to misrepresenting the record and omitting discussion of significantly probative evidence, the ALJ improperly discounted the Plaintiff's testimony at both hearings. Plaintiff testified that the migraines were "devastating," often associated with nausea, vomiting, and sensitivity to light and sound, and required her to lie down. (TR. 45, 59). The ALJ recounted Ms. Buckley's testimony, but then dismissed the significance by relying on Plaintiff's ability to perform activities on days of the week that she was without a headache. (TR. 23). But the reliance on the daily activities ignores the once weekly headaches, which the ALJ does not seem to dispute.

At the hearing, the VE testified that more than two absences from work per month would eliminate all potential employment. (TR. 61). Crediting as true Plaintiff's allegations of migraine headaches once a week would eliminate all work. The ALJ's explanation for rejecting the Plaintiff's testimony was deficient and fatal to the step five finding. *See Hawk v. Astrue*, 2013 WL 1324894, Westlaw op. at 5 (Mar. 29, 2013) (unpublished op.) (opinion that migraine headaches would cause plaintiff to miss work

twice a week was "significantly probative" evidence in light of VE's testimony that missing work more than twice a month would eliminate all work).

Further, there is no evidence in the record that contradicts Plaintiff's complaints of migraine headaches. Thus, the ALJ was required to address their impact on Ms. Buckley's ability to work. The ALJ failed to do so and the result was legal error. *See Ard v. Colvin*, 2015 WL 5117765, Westlaw op. at 4 (E.D. Okla. Aug. 31, 2015) (unpublished op). (ALJ erred by failing to include environmental limitations imposed by migraine headaches in light of evidence that headaches caused sensitivity to light and sound); *Thayn v. Astrue*, 2011 WL 1232262, Westlaw op. at 6 (D. Utah Mar. 30, 2011) (unpublished op.) (ALJ erred by failing to include impact of migraine headaches in RFC where no evidence contradicted plaintiff's testimony of once weekly migraine headaches which required plaintiff to take medication and lie down).

In discounting Ms. Buckley's migraine headaches, the ALJ erroneously engaged in a selective review of the medical record and failed to discuss significantly probative evidence, including the impact of Plaintiff's testimony in light of testimony from the VE. Based on the medical records and Plaintiff's testimony, the ALJ should have discussed the impact of the migraines on the RFC and included related limitations. As a result, the Court should conclude that the RFC lacks substantial evidence and remand is warranted.

## VI. ERROR IN THE HYPOTHETICAL QUESTION TO THE VE

Plaintiff alleges that the ALJ failed to include specific work-related mental limitations in the hypothetical question to the VE. As a result, Ms. Buckley contends that the VE's testimony does not provide substantial evidence for the ALJ's step five finding. The Court should agree.

### A. Use of a VE at Step Five

At step five, the ALJ has the burden to prove that the claimant can perform jobs that exist in the national economy. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In determining whether the claimant's work skills can be used in specific occupations, the ALJ may employ the assistance of a VE. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999).

An ALJ's hypothetical question to a VE "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F. 3d 530, 532 (10th Cir. 1995). Hypothetical questions should be crafted carefully to reflect a claimant's RFC, because "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

### B. Evidence Concerning the Plaintiff's Mental Impairments

Non-examining State Agency consultant Dr. Deborah Hartley completed two reports in her review of Plaintiff's medical records. In the Psychiatric Review Technique

(PRT) form, Dr. Hartley concluded that Plaintiff was "moderately" limited in the areas of social functioning and concentration, persistence, and pace. (TR. 473). In the Mental Residual Functional Capacity Assessment (MRFCA), Dr. Hartley made distinct findings of "marked" work-related limitations. In the area of "Understanding and Memory," Dr. Hartley stated that Plaintiff was markedly limited in her ability to understand and remember detailed instructions. (TR. 477). And in the area of "Sustained Concentration and Persistence," Dr. Hartley stated that Plaintiff was markedly limited in her ability to carry out detailed instructions. (TR. 477).

### C. The Hypothetical Failed to Incorporate Mental Work-Related Limitations

The ALJ stated that he gave Dr. Hartley's opinion "substantial weight." (TR. 24). And at step four, he made the following RFC findings:

> The claimant is able to understand, remember, and follow simple instructions to perform routine tasks and is able to sustain concentration necessary to perform unskilled work with the specific vocational profile level of two. The claimant is able to interact with coworkers and supervisors on a superficial work basis with routine supervision but cannot interact appropriately with the general public.

(TR. 20).

At this point, the burden shifted to the Commissioner to prove Ms. Buckley could perform other work. To fulfill this duty, the ALJ presented a hypothetical question to a VE and asked if work existed for an individual with certain limitations. (TR. 60). In addition to exertional limitations, the ALJ also stated: "[b]ecause of mental and psychological issues, she should not work in a workplace that relates to the general

public, and she is limited to simple tasks with routine supervision. Are there any jobs in the national economy that such a person could perform?" (TR. 60). The VE replied affirmatively and identified three jobs. (TR. 60-61). The ALJ adopted the VE's testimony and concluded that Ms. Buckley was not disabled at step five. (TR. 26).

Plaintiff alleges a lack of substantial evidence to support the step five finding due to an "errant RFC." (ECF No. 12:7). A closer examination of Plaintiff's argument, however, reveals that Ms. Buckley's reference to an "errant RFC" is actually a challenge to the hypothetical question presented to the VE at step five, and not the RFC assessment at step four. (ECF No. 12:7-13). Ms. Buckley contends that the hypothetical did not reflect Dr. Hartley's opinion that she was: (1) moderately limited in the areas of "social functioning" and "concentration, persistence, and pace," and (2) markedly limited in her ability to understand, remember, and carry out detailed instructions. According to Plaintiff, the ALJ erred in failing to include these work-related limitations in the hypothetical to the VE. The Court should conclude that Ms. Buckley is correct with respect to the "marked" limitations only.

First, Dr. Hartley's findings that Ms. Buckley was moderately limited in the areas of "social functioning" and "concentration, persistence, and pace" were opinions expressed on the PRT form. (TR. 473). The PRT findings are used to assess mental impairments at steps two and three of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, Westlaw op. at 4. But the PRT is "not an RFC assessment." *Id.* Thus, the Court should reject Plaintiff's allegations that the generalized findings of moderate impairments should

have been included in the hypothetical to the VE. See *Bales v. Colvin*, 56 Fed. Appx. 792, 798 (10th Cir. Aug. 15, 2014) (unpublished op.) ("[T]he ALJ's finding of a moderate limitation at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. . . .").

Plaintiff's remaining argument concerns Dr. Hartley's findings of marked limitations in Ms. Buckley's ability to understand, remember, and carry out detailed instructions. According to Ms. Buckley, the ALJ failed to include these limitations in the hypothetical question to the VE. As a result, Plaintiff alleges a lack of substantial evidence at step five. In support, Plaintiff relies heavily on *Jaramillo v. Colvin*, 576 Fed. Appx. 870 (10th Cir. Aug. 27, 2014) (unpublished op.). Plaintiff's argument is persuasive.

In *Jaramillo*, a psychiatrist opined that the plaintiff was moderately limited in his ability to "carry out instructions." *Id.* at 872. The ALJ afforded the psychiatrist's opinion "great weight." *Id.* at 873. In the RFC, the ALJ stated that the plaintiff was limited to performing simple, routine, repetitive, and unskilled tasks. *Id.* at 872. The ALJ then proffered these RFC limitations in a hypothetical question to a VE, who identified jobs the plaintiff could perform. *Id.* at 874.

The plaintiff's challenge hinged on a distinction between work-related skills and mental functions. *Id.* According to the plaintiff, the ALJ had a duty to expressly discuss work-related skills in the RFC and hypothetical and not simply identify a claimant's level of mental functioning. *Id.* at 874-75. The plaintiff alleged that the ALJ had failed in this regard, and had instead only identified a level of mental functioning when he limited the

plaintiff to "simple, routine, repetitive, and unskilled tasks." *Id.* at 875. The Tenth Circuit agreed.

In doing so, the Court explained that the limitations to "simple, routine, repetitive, and unskilled tasks" addressed only the plaintiff's level of mental functioning, but failed to reflect the actual work-related abilities which had been deemed moderately impaired. The Court stated:

> The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [the psychiatrist] found. Rather the ALJ was required to express those impairments in 'terms of work related functions'. . . As a result, the ALJ's reliance on the jobs the VE identified in the response to the hypothetical was not supported by substantial evidence.

*Id.* at 876 (citation omitted). *Jaramillo v. Colvin* is applicable in the instant case.

Here, Dr. Hartley found Ms. Buckley was markedly limited in her ability to understand, remember, and carry out detailed instructions. (TR. 477). The ALJ adopted Dr. Hartley's opinion, and assessed an RFC which stated that Plaintiff was "able to understand, remember, and follow simple instructions to perform routine tasks . . . ." But in the hypothetical question to the VE, the ALJ presented a generalized restriction which limited Plaintiff only to "simple tasks with routine supervision." (TR. 60). As in *Jaramillo*, the "limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the . . . impairments [the psychiatrist] found." *Jaramillo v. Colvin*, 576 Fed. Appx. At 876.

The RFC expressed specific, work-related limitations which adequately reflected Dr. Hartley's opinion regarding Ms. Buckley's marked limitations. The ALJ had a duty to precisely relate those limitations in a hypothetical question to the VE. The ALJ failed to do so and as a result, the VE's testimony cannot constitute substantial evidence to support the ALJ's decision.

## VII. EVIDENCE FROM TREATING AND CONSULTATIVE PHYSICIANS

Plaintiff contends that treating and consultative physicians had opined that she "had disabling impairments which prevented work" and suffered severe pain owing to her migraine headaches. (ECF No. 12:16). According to Ms. Buckley: (1) this evidence conflicted with opinions from agency doctors which the ALJ had accorded "significant weight" and (2) the ALJ failed to explain his treatment of the opinions.

Regarding the evidence of disabling impairments, Ms. Buckley does not cite to any specific evidence in the record and it is not the Court's duty to develop Plaintiff's argument. And as discussed, the Court should remand for further consideration of evidence concerning Ms. Buckley's migraine headaches, including any associated pain.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative development.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 16, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 2, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE